UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| INTERNATIONAL UNION, UNITED AUTOMOBILE AEROSPACE AND AGRICULTURAL WORKERS OF AMERICA, UAW, and its LOCAL 1402, <br><br>and<br><br>RONALD CLAPP, ROBERT RIETVELD, ANN SKILES, and JOHN CHESTER, as individuals, on behalf of themselves and all persons similarly situated,<br><br>    Plaintiffs,<br>v.<br><br>HYDRO AUTOMOTIVE STRUCTURES, INC., HYDRO AUTOMOTIVE STRUCTURES NORTH AMERICA, INC., and HYDRO ALUMINUM ADRIAN, INC.<br><br>    Defendants. | Case No.: 1:11-cv-28<br><br>Hon. Robert J. Jonker<br>United States District Judge |

# EXHIBIT 4

**TO PLAINTIFFS' BRIEF IN OPPOSITION TO DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT**

**Index Cont.**

| | Page |
|---|---|
| Union Stewards | 6 |
| Union Time Away from Plant | 49 |
| Union Time in Contract Negotiations | 49 |
| Union Time, Permission for | 14 |
| Unions, other | 2 |
| Vacation Pay | 75 |
| Vacation Time Off | 74 |
| Validity of Agreement | 92 |
| Vending Machine Proceeds | 101 |
| Wage Administration | 58 |
| Wages | 51 |
| Weekly Sickness and Accident Benefits | 85 |
| Workmen's Compensation Offset to Pension Benefits | 79 |

AGREEMENT

BY AND BETWEEN

PLANT #16, HOLLAND, MICHIGAN,
BOHN ALUMINUM & BRASS DIVISION,
GULF + WESTERN MANUFACTURING COMPANY

AND

THE INTERNATIONAL UNION,
UNITED AUTOMOBILE, AEROSPACE AND
AGRICULTURAL IMPLEMENT WORKERS OF
AMERICA, UAW
AND LOCAL NO. 1402

EFFECTIVE SEPTEMBER 3, 1978

Article XI Cont.

a sufficient number of employees in the department affected do not wish to work overtime. Having done this and still not having sufficient employees willing to work the Saturday overtime, the company will then assign the overtime work to employees in the classification in the order of inverse seniority with the junior qualified employee assigned first, etc., until the Company has obtained sufficient employees to do the work. This provision does not apply to temporary employees; nor does it apply to Sunday overtime, except that it will apply to Sunday on breakdown situations and in case of national emergency.

G. **EQUALIZATION OF OVERTIME.** All employees' overtime hours will be adjusted to zero (0) beginning 9/3/78. The following provisions of this paragraph apply to weekend overtime:

When an entire department is scheduled to work overtime, this information will be posted on the department bulletin board by Wednesday noon. All employees will report for work on their regular shift unless they inform their foreman by 7:00 a.m., Thursday that they do not want to work the overtime offered, in which case they will be charged with the equivalent overtime hours. If an employee is absent on Wednesday, he will be scheduled to work the overtime. If he is also absent Thurs-

Article XIII Cont.

| Seniority on December 31 | % of All Earnings Except Vacation Pay During the Calendar Year |
|---|---|
| Ten (10) years, but less than fifteen (15) years | 7% |
| Fifteen (15) years, but less than twenty (20) years | 8% |
| Twenty (20) years or over | 8½% |

B. Employees who quit or are discharges shall receive their vacation bonus provided they have accumulated one (1) or more year's seniority at the date of quitting.

C. Employees who retire under the terms of Article XIV of this agreement will receive vacation bonus for the portion of the year during which they were active employees but will not be entitled to any vacation bonus for any period after the date of retirement.

D. The vacation bonus will be paid before February 15 of each year during the life of this agreement.

ARTICLE XIV — PENSION PLAN

**SECTION 1. GENERAL.** Although reflected in a separate document, the pension plan which was in effect during the life of the contract that expired on September 2, 1978, will continue as a part of this labor agreement and will continue in effect during the new contract's life at Company expense. In addition, the improvements described in subsequent sections of this Article will be placed into effect on the dates indicated at Company expense and will be reflected in the pension plan's text.

Article XIV Cont.

contribute eight dollars and twenty cents ($8.20) per month toward the cost of Medicare coverage for eligible retirees and widow survivors.

L. Upon receipt of a duly signed check-off authorization, the Company agrees to withhold a maximum of one dollar ($1.00) per month from the pension benefit of eligible retirees. Such monies to be paid to the Local Union as monthly dues.

M. All provisions of the present pension plan not modified above will remain as at present.

## ARTICLE XV — INSURANCE

SECTION 1. GENERAL Life, accidental death and dismemberment, transition and bridge, weekly indemnity, and medical insurance coverages (i.e., hospitalization and surgical) for active and inactive payroll employees which were in effect during the life of the contract that expired on September 2, 1978, will continue in effect during the new agreement's life at Company expense. In additon, the improvements to which this Article makes reference will be placed into effect on the dates indicated at Company expense. Policies regarding eligibility for coverage and coverage effective dates which prevailed during the life of the contract that expired September 2, 1978, and which are unchanged by this Article will continue in effect during this labor agreement's life.

Article X Cont.

absence, will be handled with the least delay possible consistent with the other demands on the doctor or his substitute doctors.

If, following a leave of less than three (3) weeks' duration, examination by the Company doctor is required in addition to the return-to-work permit from an employee's personal doctor, such employee will be notified of the time and place for the examination so that work time otherwise available will not be lost. In the event the employee is approved for work by the Company doctor and otherwise available work time has been lost, the employee will be paid an amount equal to that which he would have earned during such lost time, providing the employee has notified the Company of his availability for work at the earliest reasonable time following release by his personal physician.

In any case wherein an employee has been released by his personal doctor to return to work from a medical leave of absence and the Company doctor subsequently refuses approval for such return, and if the employee has been receiving sickness and accident benefits and/or is otherwise eligible for such benefits, those benefits will be paid until return to work is allowed or until the maximum benefit limit is reached.

SECTION 5. OTHER WORK DURING LEAVE. An employee while on leave of absence accepting employment by others for compensation without

Article X Cont.

may use his vacation leave time as he sees fit, but leaves of absence will not be given in order or for the reason that the employee wishes to do other work, either for others or on his own farm or house or business.

**SECTION 4. MEDICAL LEAVE.** An employee who shall become ill and whose claim is supported by competent medical evidence shall be granted a sick leave of absence for the period of such disability provided it does not exceed three (3) years, medical leaves precipitated by circumstances to which specific reference is made in Section 14 of this agreement's Article IX will be granted for up to five (5) continuous years or a period of time equal to the employee's seniority, whichever is greater, providing the need for such an absence is substantiated by competent medical authority.

An employee returning from a medical leave of absence must present to the Company Medical Department a return-to-work permit from the employee's personal physician. Under normal circumstances, if the medical leave of absence was of three (3) weeks or more duration, the employee will be examined by the Company physician before being allowed to resume work; however, the Company reserves the right to require examination by the Company doctor following any absence due to illness or injury. Examination by the Company doctor, when required following a medical leave of

Article XV Cont.

## SUMMARY OF BENEFITS IN EFFECT 9/2/78

| BENEFITS | BENEFIT AMOUNTS |
|---|---|
| Life insurance for active payroll employees | $11,000 |
| Dependent life insurance | |
|   - Spouse | $ 1,000 |
|   - Dependent children between the ages of six (6) months and nineteen (19) years | $ 1,000 |
|   - Dependent children between the ages of fifteen (15) days and six (6) months | $ 100 |
| Life insurance for pension plan retirees | $ 1,000 |
| Accidental death and dismemberment insurance for active payroll employees | $ 9,000 |
| Survivor income benefit insurance | |
|   - Transition (24 months) | $ 150 per month |
|   - Bridge | $ 150 per month |
| Weekly sickness and accident benefits (for employees, commencing the first day of an accident and the fourth day of a sickness for a maximum period of 26 weeks; six-week maternity benefit) | $ 90 per week |
| Medical insurance (employee and dependents) | Michigan Blue Cross-Blue Shield MVF-2 Ward Program, including the following riders:<br>- D45NM<br>- ML<br>- IMB<br>- OPC<br>- CC |

Article XV Cont.

BENEFITS                    BENEFIT AMOUNTS

                            - DCCR
                            - $2.00 Co-pay Drug
                            - XF for retirees
                            - FAE-VST-Reciprocity

SECTION 2. LIFE INSURANCE. Effective October 1, 1978, the insurance coverage for otherwise eligible active payroll employees will be increased from eleven thousand dollars ($11,000) to twelve thousand dollars ($12,000). Effective October 1, 1979, life insurance coverage for otherwise eligible active payroll employees will be increased from twelve thousand dollars ($12,000) to thirteen thousand dollars ($13,000).

SECTION 3. ACCIDENTAL DEATH & DISMEMBERMENT INSURANCE. Effective October 1, 1978, accidental death and dismemberment insurance for otherwise eligible active payroll employees will be increased from nine thousand dollars ($9,000) to eleven thousand dollars ($11,000).

SECTION 4. TRANSITION AND BRIDGE BENEFITS.
A. BENEFIT CHANGES. Effective October 1, 1978, the monthly benefit under the transition and bridge program will be increased from one hundred fifty dollars ($150) to one hundred seventy-five dollars ($175). This improvement will apply to claims initiated by eligible survivors based on qualifying deaths which occur on and after October 1, 1978.

ARTICLE X — LEAVES OF ABSENCE

SECTION 1. ELIGIBILITY. An employee requesting a leave of absence for more than one (1) day shall make application therefor in writing, on a form provided for that purpose, to the supervisor of the department in which he is employed. Employees must have six (6) months or more seniority to be eligible for consideration of a leave of absence, except in those cases where definite proof is provided that they are unable to work due to emergency or sickness. A Union committeeman will be advised if the Company denies an emergency leave request.

SECTION 2. GENERAL LEAVES. Leaves of absence for reasons other than medical or for vacation may be granted at the discretion of the Company to any employee for such period as the Company may determine, but not exceeding two (2) months. When a leave of absence is granted to an employee, before it shall become effective, he and the Union shall be furnished with a written notice of the duration of such leave. The employee must state the reasons he desires a leave on his application. It is agreed that leaves under this section are to be granted only under special and/or unusual circumstances.

SECTION 3. GENERAL LEAVES-DURATION. Leaves of absence other than medical will normally be given only for periods comparable to the usual vacation allowances of one (1), two (2), three (3), or four (4) weeks per year depending on length of service of the employee concerned. An employee

Article IX Cont.

perform work normally done by bargaining unit workers, except in case of emergency or for instruction or experimental purposes. The restriction on supervisors performing work normally done by bargaining unit workers shall not apply to the foreman of the Tool Room nor shall it apply to Maintenance supervisors performing electrical work such as they have performed in the past.

SECTION 9. TEMPORARY LAYOFFS. If, due to acts of god or to circumstances beyond the Company's control, the work force must be temporarily reduced, employees may be laid off for up to and including five (5) consecutive working days. Senior employees of the affected department and shift will be given preference for available work and the least-senior employees of the affected department and shift will be laid off providing senior employees are able to perform required work. Temporarily laid off employees will not be privileged to bump.

SECTION 10. RECALL NOTIFICATION. Employees shall be notified of their recall to work by either personal message, telephone, or telegraph, confirmed by certified mail, return receipt requested. Upon being recalled, employees who fail to report for work within the period outlined in Section 11, Item D, of this Article shall be considered to have voluntarily quit.

SECTION 11. SENIORITY BREAKOFF. Seniority is broken under the following conditions:

Article XV Cont.

C. WEEKLY S&A DURING MATERNITY LEAVE. The Company agrees to indemnify Local #1402 and the International Union against possible liability in a suit seeking to require the inclusion of maternity benefits in sickness and accident insurance coverage to a greater extent than the current program provides. The Company agrees to comply with final litigation in this regard.

SECTION 6. MEDICAL INSURANCE.

A. B-77 PROGRAM. Effective October 1, 1978, eligible employees and their dependents will be covered by the Michigan Blue Cross-Blue Shield B-77 Program, including the FAE-VST-Reciprocity rider. The cost of such coverage is to be borne by the Company.

B. RETIREE DRUG COVERAGE. Effective on and after October 1, 1978, coverage under the currently-in-effect medical insurance program's $2.00 Co-pay Drug Rider for retirees under the pension plan, which is a part of this agreement, will continue to be fully paid by the Company.

C. MASTER MEDICAL PROGRAM. Effective October 1, 1978, eligible employees and their dependents will be covered by the Michigan Blue Cross-Blue Shield 80/20 Co-pay Master Medical program. Deductibles under this plan shall be one hundred dollars ($100) individual

Article XV Cont.

and two hundred dollars ($200) family. The cost of such coverages to be borne by the Company.

SECTION 7. DENTAL INSURANCE COVERAGE. Effective on and after September 3, 1978, eligible employees and their covered dependents will continue to be provided dental program insurance coverage at Company expense. Coverage effective dates will be as per this Article's Section 8.

SECTION 8. INSURANCE COVERAGE EFFECTIVE DATES.

A. Group insurance coverages (i.e., life, AD & D, dependent life, transition and bridge, weekly sickness and accident) and medical insurance coverages for a new hire or a rehired employee will become effective on the thirty-first (31st) day of employment, providing such employee is on the active payroll on such day.

B. For an employee reinstated from the inactive to the active payroll, group and medical insurance coverages provided by this agreement will become effective on the effective date of placement onto the active payroll.

C. Except for Company-paid group and medical insurance coverages hereinbefore specified for employees who retire under this agreement's pension plan, all Company-paid group and medical insurance coverages will cease

Article IX Cont.

there is a job in their respective departments which they are able to do without training. Seniority under this section will apply to layoff and recall only.

SECTION 8. SUPERVISORS-SENIORITY & BARGAINING UNIT WORK. On and after Sept. 3, 1975, a bargaining unit employee (i.e., an included employee) who accepts a transfer to a job with the Company which is not covered by the labor agreement (i.e., an excluded job) will cease to accumulate seniority under this contract six (6) consecutive calendar months immediately following the date of transfer to an excluded job and will retain the seniority accumulated until such time as service with the Company is terminated. On and after Sept. 3, 1975, a bargaining unit employee who occupies an excluded job will continue to accumulate seniority under the labor agreement for six (6) consecutive calendar months, after which seniority accumulation will cease and he shall retain the total amount of seniority accumulated as of that date.

An excluded employee with seniority under this agreement will be placed into work covered by this contract at his or the Company's election; such placement will be into any open job which he can perform or, if none exists, into any non-posted job held by an employee with lower seniority.

Foreman and supervisory employees shall not

Article IX Cont.

interdepartment transfer requests, may not exercise shift preference, and may not share in overtime opportunities except as a "qualified volunteer" under this agreement's Article XI, Section 1F.

In the event the Company transfers an employee to a temporary job, the employee so transferred shall take the rate of pay of his original job or the rate of pay of the job to which transferred, whichever is higher.

**SECTION 7. PREFERENTIAL SENIORITY.** All persons elected or appointed to hold local Union positions must be employees of the Company. The president, vice president, recording secretary, financial secretary, guide, sergeant at arms, trustees, and members of the Bargaining Committee of the Union shall head the seniority list during their terms of office but shall be returned to their original standing upon termination of their service on said Committee or in said office. The president, recording secretary, financial secreatary, and members of the Bargaining committee shall be assigned to shifts of the Union's choice within their respective job classifications during their terms of office; but, such Union officers shall be assigned a shift according to their seniority upon expiration of their terms of office. Stewards shall head the seniority lists in their respective departments or districts during their terms of office. The Local officers, committeemen, and stewards shall in the event of a layoff be continued at work as long as

Article XV Cont.

on the first (1st) day immediately following termination of seniority.

**D.** Company-paid group and medical insurance coverages for inactive payroll employees will be continued in accordance with the following:

1. Life, dependent life, AD & D, transition and bridge, and medical insurance coverages will be afforded to employees who become inactive by reason of layoff, vacation leave, personal leave, or any other approved leave for two (2) calendar months following the month in which such leaves commence.

2. Life, dependent life, AD & D, transition and bridge, and medical insurance coverages will be afforded to employees who become inactive by reason of an approved sick, industrial injury and/or sickness, or maternity leave for six (6) calendar months immediately following the month in which such approved leaves commence.

**E.** An employee who becomes inactive by reason of layoff and/or an approved leave may purchase medical insurance coverage for one (1) year immediately following the last month for which the Company remits insurance premiums in behalf of the inactive employee by making advance payments to the Company's Personnel Office.

# ARTICLE XVIII —
# TERMINATION AND MODIFICATION

This agreement will become effective on September 3, 1978, and shall continue in full force and effect without change until 12:00 midnight, September 2, 1981, and thereafter for successive period of sixty (60) days, unless either party shall, on or before the sixtieth (60th) day prior to expiration, serve written notice on the other party of a desire to terminate, modify, alter, renegotiate, change, or amend this agreement. A notice of desire to modify, alter, amend renegotiate, or change, or any combination thereof, shall have the effect of terminating the entire agreement (on the expiration date) in the same manner as a notice of desire to terminate, unless, before that date, all subjects of amendments proposed by either party have been disposed of by agreement or by withdrawal by the party proposing amendment.

Within ten (10) days after receipt of any such notice, a conference will be arranged to negotiate the proposals, in which case this agreement shall continue in full force and effect until termination, as provided herein.

Notices shall be sufficient if sent by mail, addressed, if to the Union, to Local No. 1402, International Union, United Automobile, Aerospace and Agricultural Implement Workers of America, U.A.W., Holland, Michigan, or to such other address as the Union shall furnish to the Company in writing; and, if to the Company, to Bohn Aluminum & Brass Div-

## Article V Cont.

| MANUFACTURING DEPTS. | STEWARDS |
|---|---|
| Fabrication-Buffing and Mechanical | 1 |
| Extrusion and Die Repair | 1 |

(Any department with less than five (5) employees per shift will be represented by the Forge Steward unless the Union and the Company agree to a different representation arrangement.)

It is understood and agreed between the parties that it may be necessary to change the schedule for steward representation because of changes in productive operations or conditions. Any such changes shall be negotiated between the Company and the Union.

## ARTICLE VI — GRIEVANCE PROCEDURE

**SECTION 1. GRIEVANCE STEPS.** For the purpose of this Article, a grievance shall be defined as a complaint against the Company in regard to the interpretation or application of this agreement or a complaint in regard to working conditions within the plant or on Company premises. The grievance procedure shall be as follows:

A. STEWARD-FOREMAN STEP. The employee or a representative of a group of employees, or the steward of the department, or both, shall

Article V Cont.

| MANUFACTURING DEPTS. | STEWARDS |
|---|---|
| Inspection Department | 1 |
| Paint Department | 1 |

B. AFTERNOON SHIFT.

| MANUFACTURING DEPTS. | STEWARDS |
|---|---|
| Forge | 1 |
| Fabrication-Buffing | 1 |
| Fabrication-Mechanical | 1 |
| Fabrication-Anodize and Paint | 1 |
| Extrusion (including Shipping and Receiving) | 1 |
| Inspection Department | 1 |

(Any department with less than five (5) employees per shift will be represented by the Forge Steward unless the Union and the Company agree to a different representation arrangement.)

(The Union may designate one of the afternoon shift stewards to function as chief steward for his shift.)

C. MIDNIGHT SHIFT.

| MANUFACTURING DEPTS. | STEWARDS |
|---|---|
| Forge | 1 |

Article XVIII Cont.

ision, Plant #16, Gulf + Western Manufacturing Company, Holland, Michigan, or to such other address as the Company may furnish to the Union in writing.

IN WITNESS WHEREOF, the Company has caused these presents to be signed in its behalf by its duly authorized and accredited representatives; and the Union has caused the same to be signed in its name by its accredited officers and committeemen this __5th__ day of __May__, 1979.

Bohn Aluminum & Brass Division,  
Plant #16,  
Gulf + Western Manufacturing Co.  
Holland, Michigan

International Union, United Automobile, Aerospace and Agricultural Implement Workers of America, UAW and Local No. 1402, UAW

Richard A. Crane, Plant Manager — Robert Rieveld

John J. Hosta, Personnel and Industrial Relations Manager — Donald G. Douglas

Herman J. Ter Horst, Plant Superintendent — John G. Porteous

Joe C. Tucker  
Director - Employee Relations  
Bohn Group — Jerry Van Den Berg

Brian Hyma

Robert L. Hulsebus  
International Representative

Owen Bieber,  
Regional Director

7

114