UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| INTERNATIONAL UNION, UNITED AUTOMOBILE AEROSPACE AND AGRICULTURAL WORKERS OF AMERICA, UAW, and its LOCAL 1402, <br><br>and<br><br>RONALD CLAPP, ROBERT RIETVELD, ANN SKILES, and JOHN CHESTER, as individuals, on behalf of themselves and all persons similarly situated,<br><br>    Plaintiffs,<br>v.<br><br>HYDRO AUTOMOTIVE STRUCTURES, INC., HYDRO AUTOMOTIVE STRUCTURES NORTH AMERICA, INC., and HYDRO ALUMINUM ADRIAN, INC.<br><br>    Defendants. | Case No.: 1:11-cv-28<br><br>Hon. Robert J. Jonker<br>United States District Judge |

# EXHIBIT 5

### TO PLAINTIFFS' BRIEF IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

AGREEMENT

BY AND BETWEEN

PLANT #16 & #19, HOLLAND, MICHIGAN,
BOHN ALUMINUM & BRASS DIVISION,
GULF + WESTERN MANUFACTURING COMPANY

AND

THE INTERNATIONAL UNION,
UNITED AUTOMOBILE, AEROSPACE AND
AGRICULTURAL IMPLEMENT WORKERS OF
AMERICA, UAW
AND LOCAL NO. 1402

EFFECTIVE SEPTEMBER 3, 1981

## ARTICLE XIV Cont.

tive with the signing of this agreement shall be funded over a period of thirty (30) years or less.

K. Effective October 1, 1978, the Company will contribute eight dollars and twenty cents ($8.20) per month toward the cost of Medicare coverage for eligible retirees and widow survivors.

L. Upon receipt of a duly signed check-off authorization, the Company agrees to withhold a maximum of one dollar ($1.00) per month from the pension benefit of eligible retirees. Such monies to be paid to the Local Union as monthly dues.

M. All provisions of the present pension plan not modified above will remain as at present.

## ARTICLE XV — INSURANCE

**SECTION 1. GENERAL.** Life, accidental death and dismemberment, transition and bridge, weekly indemnity, and medical insurance coverages (i.e., hospitalization and surgical) for active and inactive payroll employees which were in effect during the life of the contract that expired on September 2, 1981, will continue in effect during the new agreement's life at Company expense. In addition, the improvements to which this Article makes reference will be placed into effect on the dates indicated at Company expense. Policies regarding eligibility for coverage and coverage effective dates which prevailed during the life of the contract that expired September 2, 1981, and which are unchanged by

## ARTICLE XV Cont.

this Article will continue in effect during this labor agreement's life.

### SUMMARY OF BENEFITS IN EFFECT 9/2/78

| BENEFITS | BENEFIT AMOUNTS |
| --- | --- |
| Life insurance for active payroll employees | $11,000 |
| Dependent life insurance | |
| Spouse | $ 1,000 |
| Dependent children between the ages of six (6) months and nineteen (19) years | $ 1,000 |
| Dependent children between the ages of fifteen (5) days and six (6) months | $ 100 |
| Life insurance for pension plan retirees | $ 1,000 |
| Accidental death and dismemberment insurance for active payroll employees | $ 9,000 |
| Survivor income benefit insurance | |
| Transition (24 months) | $ 150 per month |
| Bridge | $ 150 per month |
| Weekly sickness and accident benefits (for employees, commencing the first day of an acci- | |

## ARTICLE XV Cont.

| BENEFITS | BENEFIT AMOUNTS |
|---|---|
| dent and the fourth day of a sickness for a maximum period of 26 weeks; six-week maternity benefit) | $ 90 per week |
| Medical Insurance (employee and dependents) | Michigan Blue Cross/Blue Shield MVF-2 Ward Program, including the following riders:<br>- D45NM<br>- ML<br>- IMB<br>- OPC<br>- CC<br>- DCCR<br>- $2.00 Co-pay Drug<br>- XF for retirees<br>- FAE-VST-Reciprocity |

**SECTION 2. LIFE INSURANCE.** Effective October 1, 1978, the insurance coverage for otherwise eligible active payroll employees will be increased from eleven thousand dollars ($11,000) to twelve thousand dollars ($12,000). Effective October 1, 1979, life insurance coverage for otherwise eligible active payroll employees will be increased from twelve thousand dollars ($12,000) to thirteen thousand dollars ($13,000).

**SECTION 3. ACCIDENTAL DEATH & DISMEMBERMENT INSURANCE.** Effective October 1, 1978, acciden-

## ARTICLE XV Cont.

tal death and dismemberment insurance for otherwise eligible active payroll employees will be increased from nine thousand dollars ($9,000) to eleven thousand dollars ($11,000).

**SECTION 4. TRANSITION AND BRIDGE BENEFITS.**

A. **BENEFIT CHANGES.** Effective October 1, 1978, the monthly benefit under the transition and bridge program will be increased from one hundred fifty dollars ($150) to one hundred seventy-five dollars ($175). This improvement will apply to claims initiated by eligible survivors based on qualifying deaths which occur on and after October 1, 1978.

B. **TRANSITION BENEFITS - ELIGIBILITY.** The transition benefit monthly payment will commence on the first day of the month following your death. This payment will continue for twenty-four (24) months or until you are not survived by anyone who qualifies as an eligible survivor, whichever occurs first.

The transition benefit will be paid in order of priority to:

1. Your widow or widower, if she or he was lawfully married to you for at least one (1) year immediately prior to your death.

2. Your unmarried child or children under twenty-one (21) years of age at the time each monthly benefit becomes payable.

## ARTICLE XV Cont.

**B. WEEKLY S&A BENEFITS AND DISPUTED WORKMEN'S COMPENSATION CLAIMS.** Weekly sickness and accident benefits will be payable to a Workmen's Compensation claimant whose disabling circumstances commence on and after October 1, 1978, as hereafter provided. Subject to the completion of a reimbursement agreement form provided by the Company, disability advances shall be paid to a claimant for weekly sickness and accident benefits who has alleged that the disabling circumstance is work-related when the Company does not voluntarily accept liability under existing Workmen's compensation laws, providing medical evidence of total and continuous disability satisfactory to the Insurance carrier is submitted. Such payments will cease should the Company's insurance carrier subsequently determine that a claimant is not eligible for weekly sickness and accident benefits.

In the event it is subsequently determined that weekly sickness and accident benefits remitted in this circumstance should not have been paid and/or should have been paid in a lesser amount, written notice shall be given to the claimant, and he shall repay the entire amount or the amount of overpayment to the Insurance carrier. If the claimant fails to repay promptly, the Insurance carrier shall recover the amount due and owing by making an appropriate deduction or deductions from any future benefit payment or payments payable to the employee under the group Insurance program or may cause the Company to make the appropriate deduction or deduc-

## ARTICLE XV Cont.

tions from future compensation payable by the Company to the claimant.

**C. WEEKLY S&A DURING MATERNITY LEAVE.** The Company agrees to indemnify Local #1402 and the International Union against possible liability in a suit seeking to require the inclusion of maternity benefits in sickness and accident Insurance coverage to a greater extent than the current program provides. The Company agrees to comply with final litigation in this regard.

### SECTION 6. MEDICAL INSURANCE.

**A. B-77 PROGRAM.** Effective October 1, 1978, eligible employees and their dependents will be covered by the Michigan Blue Cross-Blue Shield B-77 Program, including the FAE-VST-Reciprocity rider. The cost of such coverage is to be borne by the Company.

**B. RETIREE DRUG COVERAGE.** Effective on and after October 1, 1978, coverage under the currently in-effect medical Insurance program's $2.00 Co-pay Drug Rider for retirees under the pension plan, which is a part of this agreement, will continue to be fully paid by the Company.

**C. MASTER MEDICAL PROGRAM.** Effective October 1, 1978, eligible employees and their dependents will be covered by the Michigan Blue Cross-Blue Shield 80/20 Co-pay Master Medical program. Deductibles under this plan shall be one hundred dollars

## ARTICLE XV Cont.

($100.00) Individual and two hundred dollars ($200) family. The cost of such coverages to be borne by the Company.

**SECTION 7. DENTAL INSURANCE COVERAGE.** Effective on and after September 3, 1978, eligible employees and their covered dependents will continue to be provided dental program insurance coverage at Company expense. Coverage effective dates will be as per this Article's Section 8.

**SECTION 8. INSURANCE COVERAGE EFFECTIVE DATES.**

A. Group insurance coverages (i.e., life, AD & D, dependent life, transition and bridge, weekly sickness and accident) and medical insurance coverages for a new hire or a rehired employee will become effective on the thirty-first (31st) day of employment, providing such employee is on the active payroll on such day.

B. For an employee reinstated from the inactive to the active payroll, group and medical insurance coverages provided by this agreement will become effective on the effective date of placement onto the active payroll.

C. Except for Company-paid group and medical insurance coverages hereinbefore specified for employees who retire under this agreement's pension plan, all Company-paid group and medical insurance coverages will cease on the first (1st) day immediately following termination of seniority.

D. Company-paid group and medical insurance coverages for inactive payroll employees will be continued in accordance with the following:

  1. Life, dependent life, AD&D, transition and bridge, and medical insurance coverages will be afforded to employees who become inactive by reason of layoff, vacation leave, personal leave, or any other approved leave for two (2) calendar months following the month in which such leaves commence.

  2. Life, dependent life, AD&D, transition and bridge, and medical insurance coverages will be afforded to employees who become inactive by reason of an approved sick, industrial injury and/or sickness, or maternity leave for six (6) calendar months immediately following the month in which such approved leaves commence.

E. An employee who becomes inactive by reason of layoff and/or an approved leave may purchase medical insurance coverage for one (1) year immediately following the last month for which the Company remits insurance premiums in behalf of the inactive employee by making advance payments to the Company's Personnel Office.

F. An employee who becomes inactive by reason of an

## ARTICLE XVII Cont.

books, registration fees and/or tuition required in connection with related training for a period of not more than three (3) years under this program. When an Upgrader Trainee is required by the Company to attend classes outside of the normal working hours for the purpose of facilitating training in Extrusion Die Repair, Sample Maker or Layout Inspector, the Company will pay the individual his or her applicable rate of pay including cost-of-living but excluding shift premium and overtime premium for the actual hours that an individual participates in classroom instruction. This related training as outlined shall be on a mandatory basis for all future employees entering into this Upgrader Training. In the event an employee fails to achieve a passing grade in a course of related training, the cost of repeating such course of instruction shall be borne by the employee.

Q. The Upgrader Trainee Program may be amended to include additional training programs by mutual agreement of the Company and the Union.

## ARTICLE XVIII —
## TERMINATION AND MODIFICATION

This agreement will become effective on **September 3, 1981**, and shall continue in full force and effect without change until 12:00 midnight, **September 2, 1982**, and thereafter for successive period of sixty (60) days, unless either party shall, on or before the sixtieth (60th) day prior to expiration, serve written notice on the other

## ARTICLE XVIII Cont.

party of a desire to terminate, modify, alter, renegotiate, change, or amend this agreement. A notice of desire to modify, alter, amend, renegotiate, or change, or any combination thereof, shall have the effect of terminating the entire agreement (on the expiration date) in the same manner as a notice of desire to terminate, unless, before that date, all subjects of amendments proposed by either party have been disposed of by agreement or by withdrawal by the party proposing amendment.

Within ten (10) days after receipt of any such notice, a conference will be arranged to negotiate the proposals, in which case this agreement shall continue in full force and effect until termination, as provided herein.

Notices shall be sufficient if sent by mail, addressed, if to the Union, to Local No. 1402, International Union, United Automobile, Aerospace and Agricultural Implement Workers of America, U.A.W., Holland, Michigan, or to such other address as the Union shall furnish to the Company in writing; and, if to the Company, to Bohn Aluminum & Brass Division, Plant #16, Gulf + Western Manufacturing Company, Holland, Michigan, or to such other address as the Company may furnish to the Union in writing.

IN WITNESS WHEREOF, the Company has caused these presents to be signed in its behalf by its duly authorized and accredited representatives; and the Union has caused the same to be signed in its name by its duly authorized and accredited representatives, and the Union has caused the same to be signed in its name