UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| INTERNATIONAL UNION, UNITED AUTOMOBILE AEROSPACE AND AGRICULTURAL WORKERS OF AMERICA, UAW, and its LOCAL 1402, <br><br>and<br><br>RONALD CLAPP, ROBERT RIETVELD, ANN SKILES, and JOHN CHESTER, as individuals, on behalf of themselves and all persons similarly situated,<br><br>    Plaintiffs,<br>v.<br><br>HYDRO AUTOMOTIVE STRUCTURES, INC., HYDRO AUTOMOTIVE STRUCTURES NORTH AMERICA, INC., and HYDRO ALUMINUM ADRIAN, INC.<br><br>    Defendants. | Case No.: 1:11-cv-28<br><br>Hon. Robert J. Jonker<br>United States District Judge |

# EXHIBIT 12

**TO PLAINTIFFS' BRIEF IN OPPOSITION TO DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT**

MAILED

AGREEMENT

BY AND BETWEEN

HYDRO ALUMINUM-BOHN

Holland, Michigan

AND

The International Union,
United Automobile, Aerospace and
Agricultural Implement Workers of
America, UAW
and Local Number 1402

Effective February 11, 1991

D. For each year during the life of this Agreement, the vacation bonus will be paid no later than the pay period immediately preceding February 15 in the year following the calendar year in which the vacation bonus was earned.

## ARTICLE XIV - PENSION PLAN

SECTION 1. GENERAL. Although reflected in a separate document, the pension plan which was in effect during the life of the contract that expired on September 2, 1986, will continue as part of this labor agreement and will continue in effect during the new contract's life at Company expense. In addition, the improvements described in subsequent sections of this Article will be placed into effect on the dates indicated, at Company expense, and will be reflected in the pension plan's text.

SECTION 2. FUTURE RETIREES. The basic benefit level per month per year of credited service for otherwise eligible employees who retire under the pension plan's normal, early, disability, or vested deferred provisions on or about October 1, 1986, will be $10.75 per month per year of credited service; $11.50 per month per year of credited service on and after October 1, 1987; and $12.25 per month per year of credited service on and after October 1, 1988. Applicable actuarial reduction formulas specified within the pension plan will continue in effect. The benefit level per month per year of credited service in effect at the time a vested employee's service terminates will continue to

ARTICLE XV - INSURANCE

SECTION 1. GENERAL. Except as otherwise provided by and changed in this Agreement, life, accidental death and dismemberment, transition and bridge, weekly indemnity, and medical insurance coverages (i.e., hospitalization and surgical) for inactive payroll employees which were in effect during the life of the contract that expired on September 2, 1986, will continue in effect during the new agreement's life. Policies regarding eligibility for coverage and coverage effective dates which prevailed during the life of the contract that expired September 2, 1986, and which are unchanged by this Article, will continue in effect during this labor agreement's life.

SUMMARY OF BENEFITS IN EFFECT
NOVEMBER 8, 1990

| Benefits | Benefit Amounts |
|---|---|
| Life insurance for active payroll employees | $ 15,000 |
| Dependent insurance: | |
|     Spouse | $ 2,000 |
|     Dependent children between the ages of six (6) months and nineteen (19) years | $ 2,000 |
|     Dependent children between the ages of five (5) days and six (6) months | $ 500 |
| Life insurance for pension plan retirees | $ 1,000 |
| Accidental death and dismemberment insurance for active payroll employees | $ 15,000 |

| Benefits | Benefit Amounts |
|---|---|
| Survivor income benefit insurance: | |
|     Transition (twenty four (24) months) | $175/month |
|     Bridge | $175/month |
| Weekly sickness and accident benefits for employees (Commencing the first day of an accident and the fourth day of a sickness for a maximum period of twenty six (26) weeks.) | $145/week |
| Medical insurance (employee and dependents): | |
|     Michigan Blue Cross/Blue Shield CMM 100/200, 80-20 plan (or equivalent alternate carrier coverage) with $1000 stop loss after deductible is paid, BC/BS to pay reasonable and customary (R&C) charges; employees to co-pay five percent (5%) of monthly premium amount | |

SECTION 2. LIFE INSURANCE. Effective November 8, 1990, the insurance coverage for otherwise eligible active payroll employees will be increased from thirteen thousand dollars ($13,000) to fifteen thousand dollars ($15,000). Effective November 8, 1991, life insurance coverage for otherwise eligible active payroll employees will be increased from fifteen thousand dollars ($15,000) to seventeen thousand dollars ($17,000), and effective November 8, 1992 life insurance coverage for otherwise eligible active payroll employees will be increased from

72

than the current program provides. The Company agrees to comply with the final litigation in this regard.

SECTION 6. MEDICAL INSURANCE.

A.  CMM 100/200, 80-20 PLAN. Effective November 8, 1990, eligible employees and their dependents will be covered by the Michigan Blue Cross/Blue Shield CMM 100/200, 80-20 plan (or equivalent alternate carrier coverage), with a $1000 stop loss (after deductibles are met), BC/BS (or alternate) to reimburse eligible, covered employees for reasonable and customary charges (R&C) pursuant to BC/BS's (or alternate's) schedule of reimbursable payments. Employees shall co-pay 5% of the monthly premium, said co-pay amounts to be deducted from gross pay rather than net pay under Internal Revenue Code Section 125.

B.  PAST RETIREE (PRE - 11/08/90) MEDICAL INSURANCE COVERAGE
    During the term of this Agreement Past Retiree Medical Insurance Coverage will be as follows:
    1.  B-77 Program. Effective November 8, 1990, eligible past retirees (and their dependents) who have retired from active service under the Pension Plan will be covered by the Michigan Blue Cross/Blue Shield B-77 Program (or equivalent alternate carrier coverage), including the FAE-VST-Reciprocity Rider. The cost of such retiree group coverage shall be equally borne by the Company and the retiree electing the coverage.

77

2. **Master Medical Program.** Effective November 8, 1990, eligible past retirees (and their dependents) who have retired from active service under the Pension Plan will be covered by the Michigan Blue Cross/Blue Shield 80/20 co-pay master medical program (or equivalent alternate carrier coverage). Deductibles under this plan shall be one hundred dollars ($100.00) individuals and two hundred dollars ($200.00) family. The cost of such retiree group coverage shall be equally borne by the Company and the retiree electing the coverage.

3. **Drug Coverage.** Effective November 8, 1990, coverage for past retirees only under the previous contract's medical insurance program's two dollar ($2.00) co-pay drug rider under the pension plan, will continue in force and to be fully paid by the Company.

4. **Medicare Co-Payment.** During the life of this Agreement the Company will continue to contribute eight dollars and twenty cents ($8.20) per month toward the cost of medical coverage for eligible past retirees and surviving spouses.

5. **Premium Co-Payment.** Retiree group premium co-payments must be paid on a monthly basis and may be made by cash payment or by authorized reduction in the retiree's monthly retirement benefits.

C. FUTURE RETIREE MEDICAL INSURANCE COVERAGE

Future retirees (those who retire subsequent to the effective date of this Agreement) will be covered pursuant to the changes in medical coverage reflected by this Agreement. This includes:

1. **CMM 80-20 Plan with $100/$200 Deductible.**

   Effective November 8, 1990, employees retiring from active service (and their dependents) will be covered by the Michigan Blue Cross/Blue Shield CMM 80/20-$100/$200 Deductible Plan (or equivalent alternate carrier coverage), with a $1,000 stop loss (after deductibles are met).

   Blue Cross/Blue Shield (or alternate carrier) to reimburse eligible covered retirees for reasonable and customary charges (R & C) pursuant to Blue Cross/Blue Shield's (or alternate's) schedule of reimbursable payments.

   The cost of such retiree group coverage shall be equally borne by the Company and the retiree electing the coverage.

2. **Medicare Co-Payment.** During the life of this Agreement the Company will continue to contribute eight dollars and twenty cents ($8.20) per month toward the cost of medicare coverage for eligible retirees and surviving spouses.

79

3. **Premium Co-Payment.** Retiree group premium co-payments must be paid on a monthly basis and may be made by cash payment or by authorized reduction in the retiree's monthly retirement benefits.

SECTION 7. DENTAL INSURANCE COVERAGE. Effective on and after September 3, 1978, eligible employees and their covered dependents will continue to be provided dental program insurance coverage at Company expense. Coverage effective dates will be as per this Article's Section 8.

SECTION 8. INSURANCE COVERAGE EFFECTIVE DATES.

A. Group insurance coverage (i.e., life, AD&D, dependent life, transition and bridge, weekly sickness and accident) and medical insurance coverages for a new hire or a rehired employee will become effective on the thirty-first (31st) day of employment, providing such employee is on the active payroll on such day.

B. For an employee reinstated from the inactive to the active payroll, group and medical insurance coverages provided by this agreement will become effective on the effective date of placement onto the active payroll.

C. Except for Company-paid group and medical insurance coverages hereinbefore specified for employees who retire under this agreement's pension plan, all Company-paid group

and medical insurance coverages will cease on the first day immediately following termination of seniority.

D. Company-paid group and medical insurance coverages for inactive payroll employees will be continued in accordance with the following:

1. Life, dependent life, AD&D, transition and bridge, and medical insurance coverages will be afforded to employees who become inactive by reason of layoff, vacation leave, personal leave, or any other approved leave for two (2) calendar months following the month in which such leaves commence.

2. Life, dependent life, AD&D, transition and bridge, and medical insurance coverages will be afforded to employees who become inactive by reason of an approved non-industrial injury and/or sickness, or maternity leave for six (6) calendar months immediately following the month in which such approved leaves commence.

E. An employee who becomes inactive by reason of layoff and/or an approved leave may purchase medical insurance coverage for eighteen (18) months immediately following the last month for which the Company remits insurance premiums in behalf of the inactive employee by making advance payments to the Company's personnel office.

F. An employee who becomes inactive by reason of an industrial injury and/or illness shall continue to be provided with

coverages for life, dependent life, AD&D, transition and bridge, and medical insurance for a period not to exceed one (1) year. Cost of such coverages will be fully paid by the Company.

SECTION 9. INSURANCE HIGHLIGHT BOOKLETS. Descriptions of benefits and eligibility requirements which prevailed during the immediately preceding labor agreement's term and improvements to which reference is herein made will be reflected in insurance highlight booklets which the Company will request the respective carriers to provide covered employees.

SECTION 10. EYEGLASS PURCHASE. Effective September 3, 1983, the Company will make available to dependents of employees (those eligible for hospital/medical insurance coverage) the option to purchase eyeglasses through the Company on the same basis as such program has previously been available to employees.

ARTICLE XVI - GENERAL

SECTION 1. BULLETIN BOARDS. The Company shall permit the use by the Union a sufficient space on the Company's bulletin board for the posting of notices restricted as follows:

A.  Notice of Union recreational and social affairs.
B.  Notice of Union elections, appointments, and results of Union elections pertaining to the plant or department involved.

the actual hours that an individual participates in classroom instruction. This related training as outlined shall be on a mandatory basis for all future employees entering into this Upgrader Training. In the event an employee fails to achieve a passing grade in a course of related training, the cost of repeating such course of instruction shall be borne by the employee.

Q. The Upgrader Training Program may be amended to include additional training programs by mutual agreement of the Company and the Union.

## ARTICLE XVIII - WORK RELOCATION

Notwithstanding any other provision in this Agreement to the contrary, the Company reserves the right to relocate work when such relocation is determined in its sole judgment to be in the Company's best interest on the basis of sound business practices. Such actions shall not be taken in a capricious or arbitrary manner.

## ARTICLE XIX - TERMINATION AND MODIFICATION

This Agreement will become effective on November 8, 1990, as ratified on December 18, 1990, and shall continue in full force and effect without change until 12:00 midnight November 8, 1993, and thereafter for a successive period of sixty (60) days, unless either party shall, on or before the sixtieth (60th) day prior to expiration, serve written notice on the other party of a desire

to terminate, modify, alter, renegotiate, change, or amend this Agreement. A notice of desire to modify, alter, amend, renegotiate, or change, or any combination thereof, shall have the effect of terminating the entire Agreement (on the expiration date) in the same manner as a notice of desire to terminate, unless before that date all subjects of amendments proposed by either party have been disposed of by agreement or by withdrawal by the party proposing the amendment.

Within ten (10) days after receipt of any such notice, a conference will be arranged to negotiate the proposals, in which case this Agreement shall continue in full force and effect until termination, as provided herein.

Notices shall be sufficient if sent by mail, addressed, if to the Union, to Local Number 1402, International Union, United Automobile, Aerospace and Agricultural Implement Workers of America, UAW, Holland Michigan, or to such address as the Union shall furnish to the Company in writing; and, if to the Company, to Hydro Aluminum Bohn, Inc., 365 W. 24th Street, Holland, Michigan, or to such other address as the Company may furnish to the Union in writing.

Article XIX Continued

| Hydro Aluminum Bohn, Inc. Holland Plant Holland, Michigan | International Union, United Automobile, Aerospace and Agricultural Implement Workers of America, UAW, and Local Number 1402, UAW |
|---|---|
| *Jack Elliott* Jack Elliott Attorney-At-Law | *Robert Rietveld* Robert Rietveld President |
| *C. E. Beckham* C. E. Beckham Vice President of Operations | *Donald Welch* Donald Welch Chairman of Bargaining Committee |
| *Herman TerHorst* Herman TerHorst Operations Manager - Fabrication | *George Powell* George Powell Committee Person |
| *David A. Forbes* David A. Forbes Human Resource Manager | *Ricardo Marques* Ricardo Marques Committee Person |
| | *Ronald Clapp* Ronald Clapp Committee Person |
| | *Philip Sullivan* Philip Sullivan Committee Person |
| | *Steve Ayers* Steve Ayers International Representative |
| | *Paul Mastos* Paul Mastos Regional Director |