UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

INTERNATIONAL UNION, UNITED
AUTOMOBILE AEROSPACE AND
AGRICULTURAL WORKERS OF
AMERICA, UAW, and its LOCAL 1402,

and

RONALD CLAPP, ROBERT RIETVELD,
ANN SKILES, and JOHN CHESTER, as
individuals, on behalf of themselves and
all persons similarly situated,

     Plaintiffs,

v.

HYDRO AUTOMOTIVE STRUCTURES,
INC., HYDRO AUTOMOTIVE
STRUCTURES NORTH AMERICA, INC.,
and HYDRO ALUMINUM ADRIAN, INC.

     Defendants.

Case No.: 1:11-cv-28

Hon. Robert J. Jonker
United States District Judge

# EXHIBIT 13

**TO PLAINTIFFS' BRIEF IN OPPOSITION TO DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT**

PERMANENT

AGREEMENT

BY AND BETWEEN


HYDRO ALUMINUM **AUTOMOTIVE STRUCTURES, INC.**

Holland, Michigan


AND


The International Union,
United Automobile, Aerospace and
Agricultural Implement Workers of
America, UAW
and Local Number 1402


**Effective November 09, 1993**

## ARTICLE XIV - PENSION PLAN

SECTION 1.  GENERAL.  Although reflected in a separate document, the pension plan which was in effect during the life of the contract that expired on  September 2, 1986, will continue as part of this labor agreement and will continue in effect during the new contract's life at Company expense.  In addition, the improvements described in subsequent sections of this Article will be placed into effect on the dates indicated, at Company expense, and will be reflected in the pension plan's text.

SECTION 2.  FUTURE RETIREES.  The basic benefit level per month per year of credited service for otherwise eligible employees who retire under the pension plan's normal, early, disability, or vested deferred provisions on or about October 1, 1986, will be $10.75 per month per year of credited service; $11.50 per month per year of credited service on and after October 1, 1987; and $12.25 per month per year of credited service on and after October 1, 1988.  Applicable actuarial reduction formulas specified within the pension plan will continue in effect.  The benefit level per month per year of credited service in effect at the time a vested employee's service terminates will continue to be the basis for determining the monthly benefit amount when he is eligible to receive such benefits.

SECTION 3.  PAST RETIREES AND SURVIVING SPOUSES.  On and after October 1, 1978, the pension benefit of former employees, and

## ARTICLE XV - INSURANCE

SECTION 1. GENERAL. Except as otherwise provided by and changed in this Agreement, life, accidental death and dismemberment, transition and bridge, weekly indemnity, and medical insurance coverages (i.e., hospitalization and surgical) for inactive payroll employees which were in effect during the life of the contract that expired on September 2, 1986, will continue in effect during the new agreement's life. Policies regarding eligibility for coverage and coverage effective dates which prevailed during the life of the contract that expired September 2, 1986, and which are unchanged by this Article, will continue in effect during this labor agreement's life.

of overpayment to the insurance carrier. If the claimant fails to repay promptly, the insurance carrier shall recover the amount due and owing by making an appropriate deduction or deductions from any future benefit payment or payments payable to the employee under the group insurance program, or may cause the Company to make the appropriate deductions from future compensation payable by the Company to the claimant.

SECTION 6. MEDICAL INSURANCE.

A.  CMM 100/200, 80-20 PLAN. During the term of this Agreement, eligible employees and their dependents will be covered by the Michigan Blue Cross/Blue Shield CMM 100/200, 80-20 plan (or equivalent alternate carrier coverage), with a $1000 stop loss (after deductibles are met), BC/BS (or alternate) to reimburse eligible, covered employees for reasonable and customary charges (R&C) pursuant to BC/BS's (or alternate's) schedule of reimbursable payments. Employees shall co-pay 5% of the monthly premium, said co-pay amounts to be deducted from gross pay rather than net pay under Internal Revenue Code Section 125.

B.  PRE - 11/08/90 RETIREE MEDICAL INSURANCE COVERAGE
Those employees who retire prior to November 8, 1990, will for the term of this Agreement be covered pursuant to the medical coverage reflected by this Agreement. This includes:

1. **B-77 Program**. Effective November 9, 1993, eligible past retirees (and their dependents) who have retired from active service under the Pension Plan will be covered by the Michigan Blue Cross/Blue Shield B-77 Program (or equivalent alternate carrier coverage), including the FAE-VST-Reciprocity Rider. The cost of such retiree group coverage shall be equally borne by the Company and the retiree electing the coverage.

2. **Master Medical Program**. Effective November 9, 1993, eligible past retirees (and their dependents) who have retired from active service under the Pension Plan will be covered by the Michigan Blue Cross/Blue Shield 80/20 co-pay master medical program (or equivalent alternate carrier coverage). Deductibles under this plan shall be one hundred dollars ($100.00) individuals and two hundred dollars ($200.00) family. The cost of such retiree group coverage shall be equally borne by the Company and the retiree electing the coverage.

3. **Drug Coverage**. Effective November 9, 1993, coverage for past retirees only under the previous contract's medical insurance program's two dollar ($2.00) co-pay drug rider under the pension plan, will continue in force and to be fully paid by the Company.

4. **Medicare Co-Payment**. During the life of this Agreement the Company will continue to contribute eight dollars and twenty cents ($8.20) per month toward the cost of

medicare coverage for eligible past retirees and surviving spouses.

5. **Premium Co-Payment.** Retiree group premium co-payments must be paid on a monthly basis and may be made by cash payment or by authorized reduction in the retiree's monthly retirement benefits.

C. POST NOVEMBER 8, 1990, RETIREE MEDICAL INSURANCE COVERAGE

Those employees who retire subsequent to **November 8, 1990,** will for the term of this Agreement be covered pursuant to the medical coverage reflected by this Agreement. This includes:

1. **CMM 80-20 Plan with $100/$200 Deductible.**

Effective November 9, 1993, employees retiring from active service (and their dependents) will be covered by the Michigan Blue Cross/Blue Shield CMM 80/20 - $100/$200 Deductible Plan (or equivalent alternate carrier coverage), with a $1,000 stop loss (after deductibles are met).

Blue Cross/Blue Shield (or alternate carrier) to reimburse eligible covered retirees for reasonable and customary charges (R & C) pursuant to Blue Cross/Blue Shield's (or alternate's) schedule of reimbursable payments.

The cost of such retiree group coverage shall be equally borne by the Company and the retiree electing the coverage.

2. **Medicare Co-Payment.** During the life of this Agreement the Company will continue to contribute eight dollars and twenty cents ($8.20) per month toward the cost of medicare coverage for eligible retirees and surviving spouses.

3. **Premium Co-Payment.** Retiree group premium co-payments must be paid on a monthly basis and may be made by cash payment or by authorized reduction in the retiree's monthly retirement benefits.

SECTION 7. DENTAL INSURANCE COVERAGE. Effective on and after September 3, 1978, eligible employees and their covered dependents will continue to be provided dental program insurance coverage at Company expense. Coverage effective dates will be as per this Article's Section 8.

SECTION 8. INSURANCE COVERAGE EFFECTIVE DATES.

A. Group insurance coverage (i.e., life, AD&D, dependent life, transition and bridge, weekly sickness and accident) and medical insurance coverages for a new hire or a rehired employee will become effective on the thirty first (31st) day of employment, providing such employee is on the active payroll on such day.

B.  For an employee reinstated from the inactive to the active
    payroll, group and medical insurance coverages provided by
    this agreement will become effective on the effective date
    of placement onto the active payroll.

C.  Except for Company-paid group and medical insurance
    coverages hereinbefore specified for employees who retire
    under this agreement's pension plan, all Company-paid group
    and medical  insurance coverages will cease on the first day
    immediately following termination of seniority.

D.  Company-paid group and medical insurance coverages for
    inactive payroll employees will be continued in accordance
    with the following:

    1.  Life, dependent life, AD&D, transition and bridge, and
        medical insurance coverages will be afforded to
        employees who become inactive by reason of layoff,
        vacation leave, personal leave, or any other approved
        leave for two (2) calendar months following the month
        in which such leaves commence.

    2.  Life, dependent life, AD&D, transition and bridge, and
        medical insurance coverages will be afforded to
        employees who become inactive by reason of an approved
        non-industrial injury and/or sickness, or maternity
        leave for  six (6) calendar months immediately
        following the month in which such approved leaves
        commence.

## ARTICLE XIX - TERMINATION AND MODIFICATION

This Agreement will become effective on November **9, 1993**, as ratified on December 4, 1993 and shall continue in full force and effect without change until 12:00 midnight November 8, 1996, and thereafter for a successive period of sixty (60) days, unless either party shall, on or before the sixtieth (60th) day prior to expiration, serve written notice on the other party of a desire to terminate, modify, alter, renegotiate, change, or amend this Agreement. A notice of desire to modify, alter, amend, renegotiate, or change, or any combination thereof, shall have the effect of terminating the entire Agreement (on the expiration date) in the same manner as a notice of desire to terminate, unless before that date all subjects of amendments proposed by either party have been disposed of by agreement or by withdrawal by the party proposing the amendment.

Within ten (10) days after receipt of any such notice, a conference will be arranged to negotiate the proposals, in which case this Agreement shall continue in full force and effect until termination, as provided herein.

Notices shall be sufficient if sent by mail, addressed, if to the Union, to Local Number 1402, International Union, United Automobile, Aerospace and Agricultural Implement Workers of America, UAW, Holland Michigan, or to such address as the Union shall furnish to the Company in writing; and, if to the Company,

125

to Hydro Aluminum Automotive Structures, Inc., 365 W. 24th Street, Holland, Michigan, or to such other address as the Company may furnish to the Union in writing.

IN WITNESS WHEREOF, the Company has caused these presents to be signed in its behalf by its duly authorized and accredited representatives; and the Union has caused the same to be signed in its name by its duly authorized and accredited representatives, officers and committeepersons this 28th day of February, 1994.

Hydro Aluminum
Automotive Structures, Inc.
Holland, Michigan

International Union,
United Automobile, Aerospace
and Agricultural Implement
Workers of America, UAW,
and Local Number 1402, UAW


Theodore J. DiGuiseppe
General Manager

Robert Rietveld
President, Local 1402


Rune Are
Vice President of Finance

Ronald Clapp
Chairman, Bargaining Committee


Ralph G. Norman
Vice President of Operations

Philip Sullivan
Committee Person


Steven W. West
Human Resources Manager

Donald Douglas
Committee Person


Steve Ayers
International Representative


Jack Laskowski
Regional Director, Region 1D


127