UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

INTERNATIONAL UNION, UNITED
AUTOMOBILE AEROSPACE AND
AGRICULTURAL WORKERS OF
AMERICA, UAW, and its LOCAL 1402,

and

RONALD CLAPP, ROBERT RIETVELD,
ANN SKILES, JOHN CHESTER, and
PHILIP SULLIVAN as individuals, on behalf
of themselves and all persons similarly situated,

    Plaintiff,                         CASE NOs. 1:11-CV-28 and
                                                                       1:12-CV-324
v.

                                                                       HON. ROBERT J. JONKER

HYDRO AUTOMOTIVE STRUCTURES
NORTH AMERICA, INC., HYDRO
ALUMINUM ADRIAN, INC., and
HYDRO AUTOMOTIVE STRUCTURES
NORTH AMERICA, INC., WELFARE
BENEFIT PLAN FOR UNION EMPLOYEES,

    Defendant.
_____/

**OPINION**

On June 30, 2014, the Court approved preliminarily the parties' proposed settlement of this mandatory class action (Case No. 1:11-CV-28, docket # 330; Case No. 1:12-CV-324, docket # 200). The parties timely filed proof of service of notice of the proposed settlement to the individual class members, who had an opportunity to file any objections in writing (Case No. 1:11-CV-28, docket # 333; Case No. 1:12-CV-324, docket # 203). No objections were filed. A Fairness Hearing on the proposed settlement took place before the Court on October 9, 2014. Before the October 9, 2014

hearing, the parties notified the Court of a disagreement concerning the tax consequences of settlement payments to certain class members (Case No. 1:11-CV-28 docket # 334; Case No. 1:12-CV-324 docket # 204).  At the Fairness Hearing, the parties represented on the record in open court that the parties viewed the Settlement Agreement as fair and desired final approval of the Settlement Agreement regardless of how the Court eventually ruled on the tax dispute.  (Case No. 1:11-CV-28 docket # 339; Case No. 1:12-CV-324 docket # 211.) The Court took the proposed settlement under advisement and invited further briefing on the tax dispute.  The record is now complete.  This is the decision of the Court.

## BACKGROUND

This litigation comprises two separate, closely-related class action lawsuits involving almost identical certified classes and the same defendants.  Both lawsuits concern the nature and scope of retiree health insurance benefits under a series of collective bargaining agreements ("CBA").  The first class action, *Local 1402 International Union, United Automobile Aerospace and Agricultural Workers of America v. Hydro Automotive Structures North America, Inc.*, No. 1:11-CV-28 (W.D. Mich. Filed Jan. 7, 2011) (Hydro I), focuses on claims that the CBA entitles class members to vested lifetime retiree health insurance benefits.  The class definition in Hydro I, as amended by the Court's Order dated October 10, 2014, is:

> All former Hydro Automotive Structures North America, Inc., UAW bargaining unit employees at the Holland, Michigan facility who retired on or after November 8, 1990 and by April 1, 2009, but not former employees now receiving deferred vested pension benefits; and who were also enrolled or eligible to be enrolled in the retiree healthcare plan at any time on or after June 1, 2006; and the spouses and surviving spouses and eligible dependents of the same; provided that the employee, retired employee, spouse or eligible dependent was alive on March 1, 2014.

(Hydro I, docket # 338; Hydro II, docket # 208). The second class action, *International Union, United Automobile, Aerospace and Agricultural Workers of America and its Local 1402 v. Hydro Automotive Structures North America, Inc.*, No 1:12-CV-324 (W.D. Mich. Filed April 2, 2012) ("Hydro II"), centers on claims that the health insurance benefits at issue in Hydro I include a vested and fixed prescription drug co-pay at no expense to the members of the class certified in Hydro I. The class definition in Hydro II, as amended by the Court's Order dated October 10, 2014, is:

> All Hydro Automotive Structures North America, Inc., UAW bargaining unit employees at the Holland, Michigan facility who retired or who were eligible to retire by April 1, 2009, but not former employees now receiving deferred vested pension benefits; and who were also enrolled or eligible to be enrolled in the retiree healthcare plan at any time on or after June 1, 2006; and the spouses and surviving spouses and eligible dependents of the same; provided that if the employee retired on or after November 8, 1990, the employee, retired employee, spouse or eligible dependent was alive on March 1, 2014."

(Hydro I, docket # 338; Hydro II, docket # 208.) The Hydro II class thus encompasses all the members of the Hydro I class, plus an unknown number of individuals who were eligible to retire but did not do so during that applicable time period.

The parties filed cross-motions for summary judgment in Hydro I and Hydro II. The Court denied the motions and combined the cases for trial. As Hydro I and Hydro II progressed, Plaintiffs also considered bringing a third class action lawsuit – a potential Hydro III – concerning the status of retiree health insurance benefits for certain UAW bargaining unit retirees who retired from a particular Hydro facility before November 8, 1990. Plaintiffs claimed, and Hydro denied, that such persons have vested, lifetime retiree health insurance benefits. Hydro did not, however, make any

3

move to eliminate retiree health insurance for pre-November 8, 1990 retirees, and so Plaintiffs did not file Hydro III.

Over the course of the litigation, the parties participated in multiple settlement conferences. The parties reached a proposed settlement, memorialized in a Settlement Agreement. (Hydro I, docket # 325, Ex. A; Hydro II, docket # 195, Ex. A.) Among other things, the Settlement Agreement provides for payments to individual class members in specified amounts. The parties moved for preliminary approval of the proposed Settlement Agreement and proposed class notice. (Hydro I, docket # 324; Hydro II, docket # 194.) After a hearing on the motion, the Court preliminarily approved the proposed Settlement Agreement and proposed class notice. (Hydro I, docket # 330; Hydro II, docket # 200.) The parties timely filed proof of service of notice of the proposed settlement to the individual class members, who had an opportunity to file any objections in writing. (Hydro I, docket # 333; Hydro II, docket # 203.) No objections were filed. A Fairness Hearing on the proposed settlement took place before the Court on October 9, 2014.

Two days before the Fairness Hearing, the parties notified the Court of a disagreement concerning the tax consequences of settlement payments to certain class members (Hydro I, docket # 334; Hydro II, docket # 204). Specifically, the parties disagree about whether some or all of the settlement payments are subject to the Federal Insurance Contributions Act ("FICA") tax, and if so whether Defendants may withhold the required employee contributions from settlement payments to certain class members, or whether Defendants must gross up the settlement payment amounts to ensure that the cash-in-hand for each class member equals the stated amount of the settlement payments recited in the Settlement Agreement. Defendants posit that federal law requires the

Company to withhold FICA taxes from these settlement payments.[1] Plaintiffs question whether FICA withholding applies to the settlement payments at all. They argue further that if FICA withholding requirements do apply, the Settlement Agreement requires the Company itself to pay not only the employer contribution but also the employee share of the FICA tax so that the class members receive cash-in-hand equal to the stated amount of the settlement payments. The parties presented their initial positions at the Fairness Hearing and took the opportunity to brief the issue after the Fairness Hearing. At the Fairness Hearing, the parties represented to the Court that regardless of the Court's ruling on the tax dispute, the parties consider the Settlement Agreement fair for all parties and do not wish to withdraw from or renegotiate the Settlement Agreement. (Hydro I, docket # 339; Hydro II, docket # 209.) The parties reiterate this representation in their briefs. (Hydro I, docket ## 340, 341; Hydro II, docket ## 209, 210.) The Court addresses the tax dispute and fairness determination in turn.

## DISCUSSION

### 1.   Tax Dispute

The Court declines to take any position on the underlying tax issue of whether FICA taxes apply to some or all of the settlement payments. This is not the appropriate forum to resolve the issue. Among other things, the federal government is obviously an interested party in such a matter, and is not party to the case. Moreover, the scope, collection and operational details of the FICA tax—like most every other tax—are subject to special administrative and other procedural

---

[1] Defendants also stated during the Fairness Hearing and in their brief that they anticipate that the Company will have to pay its own share of FICA taxes as well. (Hydro I, docket ## 339, 340; Hydro II, docket # 209, 211.)

requirements. Either party is free to litigate the underlying tax issue with the appropriate federal authority under the appropriate procedure.

The question this Court can and will resolve is whether and how the Settlement Agreement itself applies if Defendants reach the conclusion that FICA applies, which would trigger normal FICA withholding rules for the employee portion of the tax.[2] The language of the Agreement does not expressly address FICA or other tax issues. The issue boils down then to whether the Settlement Agreement requires payment and receipt by class members of a particular dollar amount of cash-in-hand regardless of tax consequences or other third-party issues, such as garnishment. The Court finds that the Settlement Agreement does not require payment and receipt of a particular dollar amount of cash-in-hand regardless of third-party issues. Rather, the Settlement Agreement requires that the particular settlement payment amounts be fully applied to the benefit of each class member. The actual net cash amount to the class member could vary depending on any number of things, including tax issues, garnishments, friend of the court orders, liens, or other third-party issues.

If the parties had meant to guarantee a particular amount of cash-in-hand, they would have had to say so expressly, especially in a tax situation like this that would require grossing up settlement payments to ensure a cash-in-hand outcome. Here, nothing in the language of the contract guarantees any class member a particular amount of cash-in-hand regardless of all potentially legitimate third-party claims. A class member may be subject to garnishment or lien for some third-

---

[2] Of course, if both sides were to agree that FICA does not apply, there would be no issue. However, once Defendants conclude that FICA does apply, the Defendants themselves will have to pay the employer portion of the tax over and above the settlement payments. The Defendants will also have to withhold the employee portion because federal law requires the withholding. The only question is whether the settlement payments need to be grossed up to cover the employee contribution.

party obligation. If the third party follows proper procedures, Defendants would be obligated to honor such legal process. A particular class member would receive less cash-in-hand, but would still receive the full value of the settlement because a portion of the payment would be applied to a third-party obligation on the class member's behalf. The same is true of any required tax withholding for FICA. Once again, the withholding may result in less cash on hand for particular class members, but each class member would still be receiving the full value of the settlement by having the FICA tax withheld and applied for that class member's benefit. To rule otherwise would require the Defendants to pay more than they agreed to pay in settlement,[3] and would allow the class members to receive economic value beyond that promised in the Settlement Agreement.

Accordingly, the parties will need to deal as they see fit with the tax consequences of the settlement. This means the Defendants will need to withhold from payments to retirees FICA taxes Defendants believe are due. Defendants will also have to pay the employer portion of any FICA tax they believe due over and above the settlement payments to the class members. Of course, class members who believe no FICA tax is due may apply for refunds with the IRS. The Court is making no decision on who is right or wrong on the actual tax question of whether FICA taxes are due. All the Court is doing is concluding that the Settlement Agreement does not prohibit the Defendants from following federal law by deducting from any settlement payment the employee FICA contributions Defendants believe are due, and from paying those withheld amounts to the appropriate governmental authority on behalf of the various class members receiving cash payments.

---

[3] If the Defendants believe FICA taxes are due, they will have to fund the employer's contribution of the FICA tax out of their own pockets. This alone will mean the Defendants are incurring some added expense to implement the settlement. But that follows from the same principle that each side has to bear the tax consequences and other third-party benefits and burdens that go along with implementing the Settlement Agreement.

### 2. Fairness Determination

The Court may approve the settlement only if the Court concludes the settlement is "fair, reasonable, and adequate." FED. R. CIV. P. 23(e)(2). In making this determination, the Court considers the following factors: "(1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest. *Int'l Union, United Auto, Aerospace, and Agricultural Implement Workers of America v. General Motors Corp.*, 497 F.3d 615, 631 (6th Cir. 2007). Here, these factors readily support the conclusion that the parties' Settlement Agreement is fair, reasonable, and adequate. There is no hint of fraud or collusion. To the contrary, this litigation has been hard-fought from the beginning. The parties reached their settlement only after extensive motion practice and multiple settlement conferences. The complexity, expense and likely duration of the litigation are substantial here and favor settlement. The parties engaged in plenary discovery and have a thorough understanding of the potential risks and rewards of the cases. The settlement appropriately reflects the relative strengths and weaknesses of each side's position. Class counsel and the class representatives all support the settlement. The individual class members had ample opportunity to object to the settlement, and no one raised an objection. Public policy favors settlement of class actions.

For all of these reasons, the Court concludes that the settlement in this litigation is fair, reasonable, and adequate.

**ACCORDINGLY, IT IS ORDERED:**

The proposed Settlement Agreement (Case No. 1:11-CV-28, docket # 325-2; Case No. 1:12-CV-324, docket # 195-2) is **APPROVED**.


Dated:      February 12, 2015             /s/ Robert J. Jonker
                                          ROBERT J. JONKER
                                          UNITED STATES DISTRICT JUDGE